**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA D/B/A THE UNIVERSITY OF ALABAMA,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 22-cv-05448 |

## COMPLAINT

Plaintiff The Board of Trustees of the University of Alabama d/b/a the University of Alabama (hereinafter, the "University of Alabama" or "Plaintiff"), hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, the "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold and continue to sell products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of one or more Plaintiff's federally registered trademarks (the "Counterfeit Alabama Products").

4.      Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Alabama Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and demonstrating that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operations. Plaintiff is forced to file this action to combat Defendants'

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

counterfeiting of the trademarks owned by Plaintiff, as well as to protect unknowing consumers from purchasing Counterfeit Alabama Products over the Internet. Plaintiff has been irreparably harmed and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**The Board of Trustees of the University of Alabama**

5. Plaintiff The Board of Trustees of the University of Alabama d/b/a the University of Alabama is a public corporation and instrumentality of the State of Alabama organized and existing under the constitution and laws of the State of Alabama. The campus of the University of Alabama has its principal place of business in Tuscaloosa, Alabama 35487. The governing body of the University of Alabama is the Board of Trustees of the University of Alabama. The Board of Trustees of the University of Alabama oversees management of the University of Alabama, including management of its trademark affairs.

6. University of Alabama, Alabama's flagship educational institution, was founded in 1831, and is the oldest public university in the state of Alabama. University of Alabama offers a wide range of undergraduate, graduate and professional programs for its more than 30,000 students, and is consistently ranked as one of the top 50 public universities in the nation. In addition, the University of Alabama's graduates include 16 Rhodes Scholars, 16 Truman Scholars, 36 Hollings Scholars and 16 Boren Scholars.

7. The University of Alabama also has a long tradition of athletic excellence. Alabama's football team began playing at the intercollegiate level in 1892 and has won eighteen national championships, most recently in an undefeated 2020 season. University of Alabama's

football, basketball and baseball teams have won a combined forty-one Southeastern Conference championships. The University of Alabama's most famous athletic celebrity, Paul W. "Bear" Bryant, served as head football coach at the University of Alabama from 1958 through 1982. During that reign, Coach Bryant coached six national championship teams, was named national coach of the year three times, and was named Southeastern Conference coach of the year eight times. On November 28, 1981, Coach Bryant became the then winningest football coach in the history of college football, and retired after having won 323 games.

8.     The Board of Trustees of the University of Alabama is the owner of the famous and distinctive trademarks of the University of Alabama, and is responsible for protecting those trademarks. The Board of Trustees commercially exploits, protects and enforces rights in the famous and distinctive trademarks, names, logos, symbols, emblems, uniform designs, uniform trade dress colors, and other identifying indicia associated with the University of Alabama (collectively, the "Alabama Trademarks"), including, but not limited to, those that are the subject of valid and subsisting trademark registrations on the principal register of the United States Patent and Trademark Office and those that the University of Alabama has adopted and used in commerce throughout the United States, including Illinois. The University of Alabama owns more than ten United States federal trademark registrations in a variety of classes and for a variety of different goods and services, including, without limitation, many for apparel such as jerseys, shirts, caps, and other products in international class 25. Among the Alabama Trademarks are the word mark "ROLL TIDE" (reg. no. 1,335,032) and the University of

Alabama Logo:  (reg. no. 4,156,102).

4

9.     A non-exclusive list of the famous and distinctive Alabama Trademarks owned by University of Alabama and registered before the United States Patent and Trademark Office, and currently in use in commerce include the following:

| Registration Number | Trademark | Goods And Services |
|---|---|---|
| 1,429,820 | ALABAMA | For: Undershirts, Shirts, T-Shirts, Polo Shirts, Jerseys, Sweat Shirts, Sweat Suits, Sweaters, Jackets, Shorts, Socks, and Visors in Class 25 |
| 1,526,504 | BAMA | For: Sleep Shirts, Robes, Shirts, T-Shirts, Tennis Shirts, Ladies' Tops, Jerseys, Sweat Shirts, Sweat Pants, Warm-Up Suits, Sweaters, Blazers, Jackets, Vests, Shorts, Children's Cheerleader Outfits Consisting of a Skirt and Top; Baby Pants, Infants' Jumpers, Bibs, Ties, Shoes, Mittens, Scarves, Socks, and Caps in Class 025. |
| 1,338,772 | CRIMSON TIDE | For: Shirts, T-Shirts, Jerseys, Sweat Shirts, Shorts, Baby Pants, Infants' Jumpers, Ties, Socks and Caps in Class 025. |
| 1,335,032 | ROLL TIDE | For: Key Rings, Metal License Plates for Land Vehicles, And License Plate Frames in Class 6<br><br>For: Decals in Class 16<br><br>For: Tote Bags in Class 18<br><br>For: Stadium Cushions, Decorative Wall Plaques and Ornamental Novelty Buttons in Class 20<br><br>For: Cups, Insulating Sleeve Holders for Beverage Cans in Class 21<br><br>For: Shirts, T-Shirts, Jerseys, Jackets, Shorts, Shoes, Socks and Caps in Class 25<br><br>For: Door Mats in Class 25 |

| | | |
|---|---|---|
| 6,064,947 | THE CRIMSON STANDARD | For: Clothing, Namely, T-Shirts, Shirts, Hats, Ladies' Tops, Sweat Shirts, Sweaters, Jackets, Vests; Caps, Men's and Women's Clothing, Headwear, Sports Caps and Hats, Knit Shirts and Polo Shirts, Golf Shirts, Visors In Class 25 |
| 1,483,351 | UNIVERSITY OF ALABAMA | For: Jerseys and Sweatshirts in Class 025. |
| 4,156,102 |  | For: Men's, Women's and Children's Clothing, Namely, Hats, Socks, Shoes, Shirts, Shorts, Pants, Jackets, Jerseys, T-Shirts in Class 025. |
| 4,298,328 |  | For: Stuffed Animals, Yo-Yo's, Basketballs, Golf Balls, Footballs, Toy Model Cars, Board Games, Christmas Tree Ornaments; Snow Globes in Class 028. |
| 2,745,882 |  | For: Men's Clothing, Namely, Hats, Shirts, Jerseys; Women's Clothing, Namely, Shorts, Shirts, Pants; Children's Clothing, Namely, Socks, Shirts, Pants, Jackets in Class 025. |
| 4,755,784 |  | For: Hats in Class 25 |
| 4,625,053 |  | For: Headwear, T-Shirts, Shirts, Sweatshirts, And Jackets in Class 25 |

| | | |
|---|---|---|
| 4,640,171 |  | For: Men's, Women's and Children's Clothing, Namely, Hats, Socks, Shoes, Shirts, Shorts, Pants, Jackets, Jerseys, T-Shirts, All the Foregoing Relating to A University And/Or to Collegiate Sports in Class 25 |
| 5,093,866 |  | For: Clothing, Namely, Shirts, T-Shirts, Hats in Class 25 |
| 2,706,104 |  | For: Men's, Women's and Children's Clothing, Namely, Hats, Socks, Shoes, Shirts, Shorts, Pants, Jackets, Jerseys, T-Shirts in Class 25<br><br>For: Stuffed Animals, Yo-Yo's, Spring Toys, Basketballs, Golf Balls, Footballs, Toy Model Cars and Planes, Board Games, Christmas Tree Ornaments in Class 28 |
| 3,730,291 |  | For: Men's, Women's and Children's Clothing, Namely, Hats, Socks, Shoes, Shirts, Shorts, Pants, Jackets, Jerseys, T-Shirts in Class 25<br><br>For: Stuffed Animals, Yo-Yo's, Basketballs, Golf Balls, Footballs, Toy Model Cars and Planes, Board Games, Christmas Tree Ornaments in Class 28 |
| 3,730,292 |  | For: Men's, Women's and Children's Clothing - Namely, Hats, Socks, Shoes, Shirts, Shorts, Pants, Jackets, Jerseys, T-Shirts in Class 25<br><br>For: Stuffed Animals, Yo-Yo's, Spring Toys, Basketballs, Golf Balls, Footballs, Toy Model Cars and Planes, Board Games, Christmas Tree Ornaments in Class 28 |

| | | |
|---|---|---|
| 1,483,027 |  | For: Sleep Shirts, Robes, Shirts, T-Shirts, Tennis Shirts, Ladies' Tops, Jerseys, Sweat Shirts, Sweat Pants, Warm-Up Suits, Sweaters, Blazers, Jackets, Vests, Shorts, Baby Pants, Bibs, Ties, Shoes, Mittens, Scarves, Socks, Caps, And Visors in Class 25 |

10. The above U.S. registrations for the Alabama Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the Federal Trademark Registrations for the above Alabama Trademarks are attached hereto as **Exhibit 1**.

11. The University of Alabama's intercollegiate football, baseball, and other athletic teams (collectively, the "Alabama Teams") and the Alabama Trademarks are widely known to and enormously popular with both sports fans and the general public. The University of Alabama has promoted and advertised the university, the Alabama Teams and the Alabama Trademarks extensively for many years. The Alabama Trademarks are among the most renowned and immediately recognizable marks in college sports today. As a result of substantial advertising, promotion and media attention, and the University of Alabama's extensive licensing and sponsorship program for a wide variety of goods and services, Alabama Trademarks have acquired secondary meaning and represent significant goodwill of great value to the University of and the Alabama Teams.

12. Millions of fans have attended University of Alabama sports games and related events, enjoyed television and radio broadcasts of University of Alabama games and related events, and purchased merchandise bearing Alabama Trademarks to identify with their favorite Alabama Teams. Millions visit <rolltide.com>, the official University of Alabama athletics website, which prominently displays the Alabama Trademarks.

13. A significant aspect of the University of Alabama's business and resulting revenues has been for many years, and continues to be, the merchandising and licensing of Alabama Trademarks. The University of Alabama, in conjunction with its licensing agent, the Collegiate Licensing Company, LLC ("CLC"), has entered into numerous licensing agreements in the United States and around the world, authorizing use of the Alabama Trademarks on a wide variety of products, including apparel, hats, jewelry, toys, furniture, pennants, and bags, among others (collectively, the "Alabama Products").

14. The University of Alabama, directly and through authorized licensees, has established and maintained high standards of quality for Alabama Products, and continues to maintain stringent quality control over licensees and other authorized users of Alabama Trademarks.

15. In supervising licensees, the University of Alabama provides licensees and licensed product manufacturers with specifications setting forth extensive details with respect to use of Alabama Trademarks, including typeface and typography, color renderings, official uniform scripts, graphic designs, materials, workmanship, and quality. All Alabama Products and designs are reviewed under these strict quality control procedures.

16. As a result of the extensive use of Alabama Trademarks, not only in connection with the University of Alabama's well-known sports games, exhibitions and services, but also in connection with a wide variety of licensed merchandise promoted, sold and/or rendered in the United States and abroad, as well as widespread use in connection with a broad array of sponsorship activities spanning diverse industries, such trademarks have for many decades, and long prior to any use made by Defendants, functioned as unique identifiers and synonyms in the public mind for University of Alabama and the affiliated and related Alabama Teams. As a

9

result, Alabama Trademarks are famous and possess significant goodwill of great value to University of Alabama and its affiliated and related Alabama Teams.

**The Defendants**

17.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

18.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

19.     The fame of Alabama Trademarks and the success of Plaintiff's athletic brand and affiliated variety of products, including apparel, hats, jewelry, toys, furniture, pennants, and bags, among others (collectively, the "Genuine Alabama Products"), has resulted in significant counterfeiting of Alabama Trademarks.  Trademark Management LLC ("TML") administers Coalition to Advance the Protection of Sports logos ("CAPS") on behalf of its members, including CLC.  CAPS has created an extensive anti-counterfeiting program, which includes regularly investigating suspicious e-commerce stores identified in proactive Internet sweeps and

reported by a variety of informants in response to the significant counterfeiting of Alabama Trademarks. In recent years, CAPS, on behalf of its members, including CLC, has identified numerous fully interactive e-commerce stores on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States* prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 2**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

20. Counterfeiters "routinely use false or inaccurate names and addresses when registering with these Internet platforms," that do not require sellers to verify their identities. **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to

begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

21. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Alabama Products to residents of Illinois.

22. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of Counterfeit Alabama Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers, including, in many instances, by copying the layouts, terms of service, legal notices and/or contact information found on the websites of Plaintiff's authorized online retailers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. On information and belief,

12

Plaintiff has not licensed or authorized Defendants to use any of the Alabama Trademarks, and none of the Defendants are authorized retailers of Genuine Alabama Products.

23.     Many Defendants also deceive unknowing consumers by using one or more Alabama Trademarks without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Genuine Alabama Products.   Other e-commerce stores operating under Seller Aliases omit using Alabama Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Genuine Alabama Products.   On information and belief, those Defendants that do not use Alabama Trademarks in searchable text do so in an effort to avoid detection of their Counterfeit Alabama Products.

24.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent one from learning their true identities and the scope of their e-commerce operation.

25.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Alabama Products.   Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for

13

identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Alabama Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Alabama Products were manufactured by and come from a common source and that Defendants are interrelated.

27.    E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28.    Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29.    Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Alabama Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or

license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use one or more Alabama Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of the Counterfeit Alabama Products into the United States and Illinois over the Internet.

30.     Defendants' unauthorized use of one or more Alabama Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Alabama Products, including into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit or infringing imitations of one or more Alabama Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  Alabama Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Genuine Alabama Products sold or marketed under Alabama Trademarks.

33.     Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit or infringing reproductions of one or more Alabama Trademarks without Plaintiff's permission or consent.

34. Plaintiff is the owner of the Alabama Trademarks. The U.S. Registrations for Alabama Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Alabama Trademarks and are willfully infringing and intentionally using counterfeits or infringements of one or more Alabama Trademarks. Defendants' willful, intentional and unauthorized use of one or more Alabama Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit or infringing goods among the general public.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Alabama Trademarks.

37. The injuries and damages sustained by Plaintiff have been directly and/or proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of the Counterfeit Alabama Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. Defendants' promotion, marketing, offering for sale, and/or sale of the Counterfeit Alabama Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' Counterfeit Alabama Products by Plaintiff.

40.     By using one or more Alabama Trademarks on the Counterfeit Alabama Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Alabama Products.

41.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Alabama Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff and its Alabama Trademarks.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a. using any Alabama Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a Genuine Alabama Product or is not authorized by Plaintiff to be sold in connection with Alabama Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any products as Genuine Alabama Products or any other products produced by Plaintiff that are not Plaintiff's,

17

or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Alabama Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Alabama Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing Alabama Trademarks and damaging Plaintiff's goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Alabama Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)  Entry of an Order that, at Plaintiff's choosing, the registrant of the Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Domain Names to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable the Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Alabama Trademarks;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of Alabama Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Alabama Trademarks;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 5th day of October 2022.          Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Jake M. Christensen
Rachel S. Miller
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
jchristensen@gbc.law
rmiller@gbc.law

*Attorneys for Plaintiff The Board of Trustees of the University of Alabama d/b/a the University of Alabama*